1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERNON A. BROLLIER, | )  Case No.: 5:12-CV-01211-PSG |
| Plaintiff, | ) |
| v. | )  **ORDER DENYING PLAINTIFF'S** |
| | )  **MOTION FOR SUMMARY** |
| MICHAEL J. ASTRUE, Commissioner of Social | )  **JUDGMENT AND GRANTING** |
| Security | )  **DEFENDANT'S MOTION FOR** |
| | )  **SUMMARY JUDGMENT** |
| Defendant. | ) |
| | )  **(Re: Docket Nos. 17, 20)** |

Plaintiff Vernon A. Brollier ("Brollier") filed this action on March 12, 2012.  He appeals the decision by Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying him supplemental security income benefits.[1]  Brollier moves for summary judgment.  The Commissioner opposes the motion and cross-moves for summary judgment.  The matter was submitted without oral argument pursuant to Civ. L.R. 16-5.  Having reviewed the papers and considered the arguments of counsel, the court DENIES Brollier's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

---

[1] The challenged decision was rendered by Administrative Law Judge Brenton Rogozen (the "ALJ") on May 28, 2010. The ALJ's decision became final on January 9, 2012, when the Appeals Council of the Social Security Administration denied Brollier's request for administrative review of the decision.

1

Case No.: 5:12-CV-01211-PSG
ORDER

# I.   BACKGROUND

The following facts are taken from the decision by the ALJ and the accompanying administrative record ("AR").  Brollier was born March 24, 1964.[2] He has a tenth grade trade school education,[3] and has worked as a plumber.[4] On June 30, 2008, he injured his right hand in his home.[5] It is unclear whether Brollier stopped working after his hand injury or before. He alleges that his disability began on July 1, 2008, but his earnings for 2008 indicate that he did not have income prior to the disability.[6] In any event, on February 2, 2009, he sought psychiatric care and was diagnosed with bipolar disorder.[7]

## A.   Medical Evidence

Brollier visited various treating physicians at the Santa Clara Valley Medical Center ("SCVMC") throughout 2008. In March 2008, he visited SCVMC because of chest pain and shortness of breath.[8] Dr. Todd M. Saldinger ("Saldinger") suggested that Brollier may have had a seizure.[9] He visited SCVMC again on June 17, 2008, because he passed out.[10] Dr. Jan A. Winetz ("Winetz") believed that either pneumonia or a drug overdose was the cause.[11] On June 19, 2008, after complaining about pain in his chest and left arm, Brollier was diagnosed with tendonitis in his

---

[2] *See* AR at 113.

[3] *See id.* at 13.

[4] *See id.*

[5] *See id.* at 268.

[6] *See id.* at 104, 112.

[7] *See id.* at 458, 463.

[8] *See id.* at 276.

[9] *See id.* at 277.

[10] *See id.* at 274-75.

[11] *See id.* at 275.

Case No.: 5:12-CV-01211-PSG
ORDER

left arm.[12] In September 2008, he revisited SCVMC complaining of back pain and was prescribed various painkillers.[13]

On June 30, 2008, Brollier visited the Regional Medical Center of San Jose after he had caught his fingers in a gate. His right small finger was amputated and he received surgery on his right ring finger.[14] He also claimed to have suffered nerve damage on his right hand.[15] On July 18, 2008, surgeon Dr. Christian N. Ford operated on his hand and repaired the right ring finger ulna digital nerve.[16] A report by the Regional Medical Center stated that Brollier had a history of using methamphetamine, but had not recently used drugs.[17]

After the surgery on his fingers, Brollier was referred to "hand therapy" but did not attend the appointment.[18] He was reevaluated by Dr. Ellis Weeker ("Weeker") from Good Samaritan Hospital on September 12, 2008, for chronic joint pain.[19] Weeker found that Brollier had "injured the tip of his right fifth finger and required amputation of the distal portion."[20] Apart from the amputation, Weeker found the fifth finger to be "unremarkable."[21] He also found tenderness, but no signs of infection.[22] Brollier was evaluated by a state agency doctor, Dr. S. Amon ("Amon").[23]

---

[12] See id. at 279.

[13] See id. at 437-38, 475.

[14] See id. at 221.

[15] See id. at 202-03.

[16] See id.

[17] See id. at 268.

[18] See id. at 441.

[19] See id. at 261.

[20] See id.

[21] See id.

[22] See id.

[23] See id. at 296.

Case No.: 5:12-CV-01211-PSG
ORDER

United States District Court
For the Northern District of California

Amon found that Brollier could not perform five-digit manipulation, such as typing, and that Brollier could only occasionally climb things such as ladders or scaffolds.[24] Amon did not note any other limitations.[25] Dr. Yee, another state agency doctor, evaluated Brollier in February 2009 for the condition in his right hand and a mild stroke.[26] He did not find any mental limitations, and could not determine whether Brollier actually had a stroke.[27]

Brollier sought medical treatment for other ailments throughout 2009. In January 2009, he experienced paralysis on his left side.[28] The clinic found a minor decrease in vision and a decrease in sensation in his left hand and forearm.[29] The clinic suspected that he had a stroke or seizure.[30] They also instructed him to stop smoking after Brollier acknowledged that he would smoke a pack a week.[31] In December 2009, Brollier visited Dr. Kevin Fell for a routine follow-up and requested patches to quit smoking.[32] Brollier also sought medical attention for stress in February 2009.[33] He suffered two injuries in April 2009; an injury to his left wrist following an accident riding a bicycle[34] and an injury to his right fingers after getting caught on a ladder.[35]

---

[24] *See id.* at 298.

[25] *See id.* at 297-99.

[26] *See id.* at 308.

[27] *See id.*

[28] *See id.* at 497.

[29] *See id.* at 498-99.

[30] *See id.* at 498.

[31] *See id.* at 498, 274.

[32] *See id.* at 384-86.

[33] *See id.* at 405-07.

[34] *See id.* at 434.

[35] *See id.* at 452.

Case No.: 5:12-CV-01211-PSG
ORDER

Brollier was examined by Dr. Clark E. Gable ("Gable") for the Social Security Administration's disability determination.[36]  Gable found Brollier's hand "normal except for the right upper extremity."[37] Gable found that the range of motion about his shoulder and elbows appeared normal bilaterally.[38] He opined that Brollier had some atrophy and decreased grip strength in his right hand.[39] He also noted that Brollier wrote fairly legibly, though it was "fairly shaky" and "appear[ed] to be permanent."[40] Gable also opined that Brollier could sit up to six hours per day with usual breaks, and could stand or walk for up to six hours with usual breaks.[41] Gable stated that Brollier had no limitations other than those due to his finger injury.[42] He saw no problem with the left upper extremity.[43] On the right side, Gable noted that Brollier could not lift more than five pounds frequently and ten pounds occasionally to shoulder level; and lift no more than twenty pounds with both hands frequently.[44] He noted that Brollier had limited pinching ability and fine finger and hand movements.[45]

In February 2009, Brollier began seeking psychiatric care. He claimed that he had sadness and stress due to living in a homeless shelter.[46] Dr. Simran Singh diagnosed Brollier with bipolar disorder and prescribed two medications.[47] In a follow-up appointment, Dr. Anisa Rangwala also

---

[36] *See id.* at 304-07.

[37] *See id.* at 306.

[38] *See id.*

[39] *See id.* at 307.

[40] *See id.* at 306-07.

[41] *See id.* at 306-07.

[42] *See id.* at 307.

[43] *See id.*

[44] *See id.*

[45] *See id.*

[46] *See id.* at 455-57.

[47] *See id.* at 464.

Case No.: 5:12-CV-01211-PSG
ORDER

diagnosed Brollier with dipolar disorder, prescribed Abilify, and continued him on the previous medications.[48] He did not seek any additional psychiatric care until July 2009, when he reported that he was feeling better.[49]

In February 2010, Dr. Cheryl Ho ("Ho") filled out a questionnaire for Brollier's attorney about his medical condition.[50] Ho states that she had been Brollier's treating physician since 2009.[51] She opined that Brollier had chronic pain in the right arm and lower back, with radiating pain to the lower extremities.[52] Ho also opined that Brollier suffered from depression, dipolar disorder, and other psychological factors which affected him physically.[53] She stated that he was only capable of low stress jobs due to his inability to concentrate, and that he could only sit for thirty minutes at a time and stand for one hour at a time.[54] She stated that Brollier could not use his right hand.[55] She also opined that Brollier was likely to be absent from work more than four days per month because of these impairments.[56]

In April 2010, psychologist Janine Marinos, Ph.D. ("Marinos") examined Brollier at the agency's request.[57] Marinos stated that Brollier had not used methamphetamine in over a year, but continued to use marijuana and drink heavily.[58] Brollier stated that he could do light chores, and

---

[48] *See id.* at 456.

[49] *See id.* at 414.

[50] *See id.* at 500.

[51] *See id.* at 501. It appears that there are no treatment records from Dr. Ho in the record.

[52] *See id.*

[53] *See id.* at 502.

[54] *See id.*

[55] *See id.* at 503.

[56] *See id.* at 504.

[57] *See id.* at 506.

[58] *See id.* at 507.

Case No.: 5:12-CV-01211-PSG
ORDER

United States District Court
For the Northern District of California

bathe and dress himself independently.[59] She stated that his memory and current level of intellectual functioning were average.[60] Marinos opined that Brollier could understand, remember, and carry out job instructions, as well as maintain adequate concentration and pace for routine tasks.[61] She concluded that he could interact well with others, and his limitations were only physical.[62]

Before his current application, Brollier applied for disability benefits in 1995, 1999, 2003, 2006, and 2007, but his claims were denied.[63] On July 28, 2008, after his hand injury, he filed his current application.[64] The Agency denied the application.[65] Brollier added "mild stroke" to his list of disabilities, and was denied again.[66] The Commissioner denied the application on reconsideration.[67] Upon a hearing, the ALJ denied Brollier's application in May 28, 2010, and the Appeals Council denied review.[68]

**B.    Hearing**

The ALJ held a hearing on February 24, 2010.[69]  At the hearing, Brollier appeared with his counsel.[70] Brollier began testifying about his background, stating that he left high school in tenth

---

[59] *See id.* at 509.

[60] *See id.*

[61] *See id.* at 509.

[62] *See id.*

[63] *See id.* at 113. In 1999, the ALJ found that Brollier had a slight impairment. His claim was denied at the hearing stage. On all other occasions, his claim was denied at the initial stage. In 1995 he was denied because of his capacity to work, in 1999 and 2003 his impairment did not satisfy the requirements, and in 2006 and 2007 he was not insured.

[64] *See id.* at 13.

[65] *See id.*

[66] *See id.* at 74.

[67] *See id.*

[68] *See id.* at 1.

[69] *See id.* at 26.

Case No.: 5:12-CV-01211-PSG
ORDER

grade and lives in a homeless shelter.[71] He stated that he was a plumber up until his injury.[72] He mentioned that he also had legionnaire's disease and experienced difficulty interacting with others.[73] He said he can no longer do plumbing because he has difficulty grabbing items.[74]

Vocational Expert Thomas Linvill ("Linvill") testified that Brollier's records indicate that he has not had earnings above a couple thousand dollars since 1994. He also testified that Brollier's upper right extremity and wrist limitations would not prevent him from performing other jobs with light strength requirements. Linvill gave examples such as parking lot attendant, sales clerk, or furniture rental consultant.[75] The ALJ took the case under submission.

### C.    ALJ's Findings

The ALJ issued his decision on May 28, 2010. For the first step of the disability analysis, the ALJ found Brollier had not been engaged in substantial gainful employment since July 22, 2008.[76] At step two, he found that Brollier's hand injury and nerve damage qualified as severe impairments under 20 C.F.R. § 416.920(c).[77] At step three, the ALJ found Brollier's impairments did not meet or medically equal any of the listed impairments.[78] At step four, he found that the claimant did not have any past relevant work.[79] At step five, he found that Brollier had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except

---

[70] *See id.* at 28.

[71] *See id.* at 29-30.

[72] *See id.* at 31.

[73] *See id.* at 33-34.

[74] *See id.* at 40.

[75] *See id.* at 48, 53.

[76] *See id.* at 15.

[77] *See id.*

[78] *See id.* at 18.

[79] *See id.* at 20.

Case No.: 5:12-CV-01211-PSG
ORDER

**United States District Court**
For the Northern District of California

being "limited to lifting five pounds frequently and ten pounds occasionally" and having "limited ability to pinch and perform activities requiring fine finger and hand movements with the right upper extremity."[80]

The ALJ analyzed each impairment individually and gave several grounds for his determination. He started with Brollier's claims of depression and substance abuse, and found that they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."[81] Next, he analyzed Brollier's bipolar disorder, and found that there were no significant limitations in Brollier's memory or concentration.[82] He analyzed Brollier's complaints of chest pain and low back pain, and found them to be "not medically determinable or non-severe."[83] He stated that Brollier never listed chest pain initially when seeking disability, and that his medical records show inconsistent symptoms with his back pain. For example, Brollier indicated that he had no back pain on certain doctor intake forms. Gable, the Disability Determination Services Medical Expert, conducted a musculoskeletal exam which indicated that there was no evidence to substantiate severe back pain.[84] With regards to Brollier's Legionnaire's disease, the ALJ found that "there is no evidence in the record that the claimant's Legionnaire's disease is the cause of his impairments, or that he has received regular treatment for this impairment other than his assertion to Dr. Gable... in 2007."[85] Finally, the ALJ analyzed Brollier's finger injury and amputation, finding that because Brollier failed to show up to his hand therapy appointments, his symptoms and limitations could not have been "as bad as he alleges."[86] The ALJ pointed to Gable's opinion noting normal musculoskeletal function, with the exception of "some

[80] *See id*. at 18.

[81] *See id*. at 15.

[82] *See id*. at 17.

[83] *See id*.

[84] *See id*.

[85] *See id*. at 18.

[86] *See id*. at 19.

Case No.: 5:12-CV-01211-PSG
ORDER

1    limitations in the right upper extremity, moderate to markedly decreased grip strength, 30% of

2    normal ability to pinch, and inability to make a complete fist."[87] The ALJ also noted Brollier's own

3    testimony, where he stated after the accident that he had been "working like a dog," and working

4    forty hours a week in the kitchen.[88]

5        When analyzing all of the claimed impairments, the ALJ explained that he gave Gable's

6    opinion "great weight" because it was "overall consistent with the record as a whole."[89] He further

7    explained that Brollier's allegations and testimony "[was] not entirely credible," and his subjective

8    complaints "[were] overall not consistent with the medical record as a whole."[90]

## II.   LEGAL STANDARDS

### A.    Standard for Reviewing the Commissioner's Decision

11       Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's

12   decision denying Brollier's benefits. The Commissioner's decision (here the underlying decision of

13   the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon

14   the application of improper legal standards.[91] In this context, the term "substantial evidence" means

15   "more than a scintilla but less than a preponderance – it is such relevant evidence a reasonable

16   mind might accept as adequate to support the conclusion."[92] When determining whether substantial

17   evidence exists to support the administrative record as a whole, the court must consider adverse as

18   well as supporting evidence.[93] Where evidence exists to support more than one rational

19   interpretation, the court must defer to the decision of the ALJ.[94] "If additional proceedings can

---

[87] *See id.*

[88] *See id.*

[89] *See id.*

[90] *See id.* at 20.

[91] *See Moncada v. Chater,* 6 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[92] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[93] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989).

10

Case No.: 5:12-CV-01211-PSG
ORDER

1    remedy defects in the original administrative proceedings, a social security case should be

2    remanded."[95]

3    **B. Standard for Determining Disability**

4            Disability claims are evaluated using a five-step, sequential evaluation process. In the first

5    step, the Commissioner must determine whether the claimant currently is engaged in substantial

6    gainful activity; if so, the claimant is not disabled and the claim is denied.[96] If the claimant is not

7    currently engaged in substantial gainful activity, the second step requires the Commissioner to

8    determine whether the claimant has a "severe" impairment or combination of impairments that

9    significantly limits the claimant's ability to do basic work activities; if not, a finding of "not

10   disabled" is made and the claim is denied.[97] If the claimant has a "severe" impairment or

11   combination of impairments, the third step requires the Commissioner to determine whether the

12   impairment or combination of impairments meets or equals an impairment in the Listing; if so,

13   disability is conclusively presumed and benefits are awarded.[98] If the claimant's impairment or

14   combination of impairments does not meet or equal an impairment in the Listing, the fourth step

15   requires the Commissioner to determine whether the  claimant has sufficient "residual functional

16   capacity"[99] to perform his or her past work; if so, the claimant is not disabled and the claim is

17   denied.[100] The plaintiff has the burden of proving that he or she is unable to perform past relevant

18   work.[101] If the claimant meets this burden, a prima facie case of disability is established. The

19

20   [94] *Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

21   [95] *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

22   [96] *See id.*

23   [97] *See id.*

24   [98] *See id.*

25   [99] A claimant's RFC is what he or she can still do despite existing exertional and nonexertional

26   limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

27   [100] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

28   [101] *See id.*

Case No.: 5:12-CV-01211-PSG
ORDER

Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[102] the determination of this issue comprises the fifth and final step in the sequential analysis.

### III.   DISCUSSION

Brollier argues the ALJ erred in his ultimate finding that Brollier was not "disabled" as defined by the Social Security Act ("SSA"), 42 U.S.C. § 401 *et seq*, and thus, was ineligible for disability benefits. He raises four broad challenges to the ALJ's decision: (1) the ALJ failed to include all of Brollier's impairments; (2) the ALJ erroneously relied on the opinions of consultative examining physicians; (3) the reasons advanced by the ALJ for failing to credit Brollier's testimony are not supported by substantial evidence; and (4) the ALJ's errors warrant reversal rather than remand.[103]

The Commissioner responds that: (1) the ALJ properly assessed Brollier's alleged impairments; (2) the ALJ properly credited the consultative examining physician's opinion over Ho's opinion; (3) Brollier identifies no error in the ALJ's analysis; and (4) substantial evidence supports the ALJ's credibility finding.[104]

### A.   ALJ's Consideration of Impairments

Brollier first argues that the ALJ failed to consider all of Brollier's impairments. Specifically, Brollier contends that his impairments were severe because he was diagnosed and treated with depression, suicide attempt, anxiety disorder, and bipolar disorder, and had serious back problems.[105]

---

[102] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

[103] *See* Docket No. 17.

[104] *See* Docket No. 20.

[105] *See* Docket No. 17. at 9.

Case No.: 5:12-CV-01211-PSG
ORDER

**United States District Court**
For the Northern District of California

1    Although Brollier's argument appears to be that the ALJ failed to classify his impairments

2  as severe for purposes of step two, the salient question is whether the ALJ considered the

3  impairments for purposes of the RFC determination.[106] This is because the step two determination

4  is merely a threshold inquiry of whether claimants have any impairment that affect their ability to

5  work. "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."[107]

6  If they do not, they are immediately categorized as "not disabled."[108] At step four and five, the

7  court further analyzes these impairments to determine the claimant's RFC and ability to work.[109] If

8  any impairment is found to be severe, the ALJ at step five must consider whether all impairments,

9  severe and non-severe, affect the claimant's ability to work.[110] Here, Brollier had at least one

10  severe impairment (the hand injury), so the ALJ was already required to take into consideration

11  non-severe, medically determinable impairments when determining the RFC.[111] Therefore, it does

12  not matter whether the mental disorders or back pain were labeled "severe" at step 2.

13    Although Brollier raises the issue that the ALJ should have considered additional symptoms

14  other than hand and wrist pain for purposes of the RFC, Brollier fails to provide any analysis

15  supporting this assertion, or argue that this failure would necessarily have altered the ALJ's

16  ultimate determination.[112] On that basis, the court could simply reject Brollier's argument, because

17  even if it were true, the ALJ's outcome would not be in error. The court is not required to consider

---

[106] *See* 20 C.F.R. § 404.1520(a)(4).

[107] *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[108] *See id.* § 404.1520(c).

[109] *See* § 404.1520(e)-(f).

[110] *See Smolen*, 80 F.3d at 1290.

[111] *See id.*

[112] The bulk of Brollier's argument is that "[t]he ALJ erred in not finding that Brollier's mental impairments were severe." *See* Docket No. 17 at 3. However, at the end of the argument, he conclusorily asserts that the ALJ erred in failing to consider these impairments for purposes of the RFC. *See id.* at 5-6.

13

Case No.: 5:12-CV-01211-PSG
ORDER

conclusory unsupported arguments.[113] But in the interest of giving Plaintiff's argument due consideration, the court will consider whether the ALJ took Brollier's other impairments into account for purposes of step four and five, and whether this would have altered the ALJ's decision.

In making his RFC evaluation, the ALJ considered "all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence of other evidence."[114] Further, the ALJ noted that "[t]he medical evidence in the case record establishes that the claimant's allegations and testimony regarding his symptoms is not entirely credible."[115] The ALJ considered "the claimant's own lack of subjective complaints; the absence of medically determinable impairments which can reasonably be expected to produce his symptoms; absence of clinical signs and laboratory findings…absence of longitudinal records…claimant's lack of attempts to obtain relief from pain and other symptoms…observations of administration personnel who noted that the claimant had no difficulty sitting, standing or walking during a personal interview," among others, in dismissing claimant's allegations of conditions aside from his hand and arm conditions.[116] While the ALJ does not discus every one of Brollier's  numerous complaints in detail in the RFC determination, the court finds this was unnecessary given the thorough discussion of these alleged conditions in step two. For example, when discussing Brollier's depression and bipolar disorder, the ALJ relied on Marinos' objective findings that Brollier only has mild limitation in social functioning, daily living, concentration, and finding of no episodes of decompensation. When discussing Brollier's suicide attempt, the ALJ found that it was not "relevant for assessing the claimant's *current* level of functioning."[117]

---

[113] *See Carmickle v. Commissioner*, 533 F.3d 1155, 1162 (9th Cir. 2008) (issue waived where claimant did not argue with "any specificity").

[114] *See* AR at 18.

[115] *See* AR at 20.

[116] *See id.*

[117] *See* AR at 16.

Case No.: 5:12-CV-01211-PSG
ORDER

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1     Brollier did not proffer evidence to counter these findings. His statement that he sometimes

2   does not get along with coworkers is not sufficient to show that his social functioning is seriously

3   impaired.  Nor did Brollier put forth medical evidence indicating that he still has suicidal

4   tendencies. Brollier only points to a questionnaire filled out by Ho where she checked off

5   "depression," a SCVMC record from 2007 stating he has anxiety, a hospital record indicating that

6   he was once admitted in 2006 for a suicide attempt, and various records stating he has bipolar

7   disorder and the medications he uses.[118] While these records may indicate that he has or had one of

8   these disorders, they do not indicate the status of his current mental impairment. On the contrary,

9   the only status reported about the current severity and progression of his mental impairments is the

10   SCVMC psychiatrist note where Brollier states that he is feeling better with the medication.[119]

11   Because Brollier only proffered evidence showing that he at some point suffered from these

12   disorders, but did not indicate impairment in one of the four functional areas, the court finds that

13   the ALJ's was justified both in finding these symptoms to be non-severe (step-two) and

14   insubstantial for purposes of the RFC determination (step four and five).

15     The ALJ also specifically considered Brollier's low back pain. Brollier cites a cervical

16   spine cat scan from 2008 indicating degenerative changes in his back and reports from 2008 where

17   he claimed to have low back pain.[120] Neither of these indicate, however, that his spine problems are

18   medically determinable or affect his ability to work. The records also show that he has no acute

19   fractures, normal alignment, and no canal stenosis.[121] Further, the ALJ noted a medical record

20   where the claimant complained of "no pain at all."[122] The ALJ's conclusion that back pain did not

21   seriously affect his ability to work was reasonable.

22

23   _____

[118] *See* Docket No. 17 at 9.

24
[119] *See* AR at 414.

25
[120] *See* Docket No. 17 at 9.

26
[121] *See* AR at 284.

27
[122] *See* AR at 17.

28

15

Case No.: 5:12-CV-01211-PSG
ORDER

**B.  Medical Evidence Determinations**

Brollier next asserts that the ALJ improperly discredited medical opinions from Ho and improperly relied on Gable's opinions. Three types of physicians may be considered for social security determinations: 1) treating physicians who treat the claimant; 2) examining physicians who have examined but not treated the claimant; and 3) non-examining physicians who have neither examined nor treated the claimant, but have analyzed the claimant's records.[123]

Brollier claims that the ALJ must give primacy to the opinion of the treating physician, whom he asserts was Ho. An ALJ should not give controlling weight to a treating physician's opinion, however, unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[124] Other factors to consider in determining how much weight to give to a treating physician include the "length of the treatment relationship," "the frequency of examination," and "nature and extent of the treatment relationship."[125]

First, Ho's opinions are not well supported by any documented medical evidence. The only record produced by Ho is the questionnaire she filled out for the claimant for purposes of this case. The answers on the questionnaire were not substantiated by objective findings, and were also inconsistent with the record. She stated in 2010 that Brollier had been bipolar for "years," even though she had only begun seeing him since 2009. There is also nothing to indicate that she was trained in psychological diagnosis. The records that Brollier cites to when justifying Ho's opinion are the treatment notes from the psychology department at SCVMC, records from the plastic surgery department, examination records indicating low back findings, a CT scan of his cervical spine, and a serology test showing a high reading of Legionella. While Ho may have had access to them in the few times she saw Brollier, there is no evidence indicating that she herself had a treating relationship with Brollier sufficient enough to deserve primary weight.

---

[123] *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

[124] 20 C.F.R. § 416.927(c)(2).

[125] *See id.* § 416.927(c)(2)(i), (ii).

16

Case No.: 5:12-CV-01211-PSG
ORDER

United States District Court
For the Northern District of California

Ho also did not have longitudinal history with Brollier. Brollier stated that he had been seeing Ho every couple of months since 2009, though there is no medical documentation supporting this statement. Ho herself acknowledges that she did not have longitudinal history with Brollier.[126] Additionally, there are no records that define the nature and extent of Brollier's and Ho's medical relationship. The ALJ was justified in finding that Ho's and Brollier's medical relationship was not sufficient enough to deserve primary weight.

The ALJ did not err in giving primary weight to Marinos and Gable. The ALJ chose to give weight to Marinos' findings of Brollier's mental health because it was consistent with the record as a whole. Marinos reviewed Brollier's medical records, performed her own testing, and took his subjective complaints into account. Brollier argues that the ALJ should not have given weight to Marinos because she "apparently…was not given and never reviewed any psychiatric treatment notes," and because her testing was allegedly "directed to Intelligence, Memory and organic brain damage."[127] Brollier has not shown that Marinos did not review his past psychological medical records, and his latter allegation of Marinos' testing is untrue. Marinos examined and tested Brollier in the four major functional areas to be considered in a social security proceeding.[128]

In regards to the first area, daily living, Marinos noted, based off objective evidence and Brollier's own statements, that Brollier can bathe, dress, prepare meals, and do light chores independently.[129] Nothing in the record indicates that Brollier cannot perform these tasks. In the second area, social functioning, Marinos based her findings off of Brollier's own statements to her about his relationship with coworkers and authority, as well as her subjective opinion of how

---

[126] *See* AR at 501. Ho stated in the questionnaire that she had been seeing him "every several months" since 2009.

[127] *See* Docket No. 17 at 10.

[128] *See* AR at 506-509. The four functional areas Marinos reviewed are daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. *See also* AR 15-16.

[129] *See id.* at 506.

17

Case No.: 5:12-CV-01211-PSG
ORDER

Brollier acted around her.[130] In the third area, concentration, intelligence, persistence, pace, and memory, she performed actual testing to determine his intelligence and concentration levels.[131] There is no other medical evidence in the record indicating that his intelligence, memory or concentration levels are too low. In the final area, Marinos and the ALJ noted that there were no episodes of decompensation which have been of extended duration.[132] Brollier did not put forth evidence indicating otherwise. The ALJ was justified in finding Marinos' opinion to be well-supported by evidence.

Brollier argues the ALJ erred in relying on Gable's opinion because Gable only saw Brollier once.[133] Although the ALJ relied on Gable's findings on Brollier's back pain, hand functioning, and drug use, substantial evidence shows that Gable's opinion is more consistent with the record as a whole than Ho's. Gable took into account objective evidence from tests that he administered, review of previous  medical records and past medical history, as well as Brollier's own subjective complaints when making these opinions.[134] He administered a musculoskeletal exam of Brollier's hand and based his opinion off observed ranges of motion, gripping strength and other physical exercises.[135] Gable also administered a musculoskeletal exam of the lower back and found nothing to substantiate low back pain.[136] This is consistent with the rest of the record, including Brollier's March 2009 intake form where he said he had no back pain, a normal July 2008 CT scan, and the fact that Brollier had never been referred to physical therapy, chiropractic treatment or an orthopedist.[137] The ALJ did not err in relying on his opinion.

---

[130] *See id.* at 507.

[131] *See id.* at 509-10.

[132] *See id.* at 16.

[133] *See* Docket No. 17 at 10.

[134] *See* AR at 305-07.

[135] *See id.* at 306.

[136] *See id.* at 306-07.

[137] *See id.* at 411, 284.

Case No.: 5:12-CV-01211-PSG
ORDER

### C. Brollier's Subjective Symptom Evidence

Next, Brollier argues that the ALJ improperly rejected Brollier's own testimony regarding his complaints. When assessing the subjective complaints of the claimant, the ALJ must make credibility findings, which must be sufficiently specific to make clear to the individual and any reviewers the weight the adjudicator gave to the claimant's statements and the reasons for that weight.[138] If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage "in second-guessing."[139] In making this finding, the ALJ may employ "ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony."[140] Brollier argues that the ALJ's failure to credit Brollier's testimony is not supported by substantial evidence. Although Brollier does not identify which subjective complaints in the record, specifically, should be taken into account, Brollier now alleges his subjective complaints regarding hand pain, low back pain, and mental health should be considered.

Brollier argues that the ALJ's findings cannot be supported because the record includes many complaints of subjective symptoms, the clinical and objective findings support his symptoms, Brollier is homeless and therefore cannot keep appointments, he routinely sought treatment, and Brollier's inconsistent work record should not have affected his credibility.[141] The court agrees that there were many subjective complaints regarding Brollier's hand pain, back pain, and bipolar disorder, and that the ALJ did not give a sufficient reason as to why Brollier's inconsistent work pattern affected his credibility. But these subjective complaints for the impairments are inconsistent with the medical records, Brollier's failure to follow through a

---

[138] *See* SSR 96-7p.

[139] *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002) (*citing Morgan v. Commissioner of Social Sec. Admin,* 169 F.3d 595, 600 (9th Cir. 1995)).

[140] *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005).

[141] *See* Docket No. 17 at 7-9.

Case No.: 5:12-CV-01211-PSG
ORDER

United States District Court
For the Northern District of California

proscribed medical treatment, and Brollier's daily activities, and so the ALJ was justified in finding Brollier not entirely credible.[142]

Regarding Brollier's subjective complaints of depression, these cannot be reconciled with documented statements where he said he was feeling better.[143] Brollier never provided evidence to indicate that his depression has worsened since he last claimed he was feeling better.

Regarding the low back pain and hand pain, the clinical and laboratory findings do not support Brollier's assertions. The musculoskeletal exam conducted on January 13, 2009,  indicates that his low back is normal.[144] Moreover, despite his complaints, he was never referred to physical therapy or to a chiropractor by a physician. Therefore, despite Brollier's subjective complaints of back pain, the ALJ noted ample evidence discrediting his testimony.

Also as noted by the ALJ, the medical records show that Brollier's hand injury was not as debilitating as he claims. The clinical examinations indicate that he could still perform light work. Brollier himself stated that he had been "working like a dog" at the homeless shelter despite the finger amputation.[145]

In regards to his bipolar disorder, the medical evidence also indicates that his bipolar disorder was not as severe as Brollier suggested. Objective observations about his concentration levels, social functioning levels, and memorization support the ALJ's findings. Brollier did not proffer evidence that his concentration, social skills or memory are impaired, except that he did not get along with some coworkers. The ALJ's  decision to dismiss Brollier's subjective complaints about the severity of his bipolar disorder is supported by substantial evidence.

---

[142] The fact that the court agrees with Brollier on these two points is not sufficient to overturn the ALJ's findings. Even if the court finds that two of the many findings by the ALJ in his credibility determination were invalid, the court should not overturn the ALJ's decision if the "ALJ's error ... was inconsequential to the *ultimate nondisability determination.*" *Carmickle,* 533 F.3d at 1162 (*citing Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (emphasis added)).

[143] *See* AR at 414 (mental health treatment notes from 2009 stating Brollier was "feeling better").

[144] *See* AR at 304, 306.

[145] *See* AR at 414.

Case No.: 5:12-CV-01211-PSG
ORDER

Lastly, the court finds that the ALJ properly dismissed Brollier's homelessness as a credible reason for failing to attend his appointments. As part of his credibility determination, the ALJ considered Brollier's failure to follow up with appointments. An "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" may cast doubt on the claimant's sincerity.[146] For example, the record shows that Brollier never showed up for hand therapy, despite his complaints of hand pain. Brollier argues that he did not show up for hand therapy and did not establish longitudinal records with physicians because of his homeless status.[147]

While his homelessness might explain why he was unable to show up on time to a scheduled hand therapy appointment, it does not explain his failure to reschedule the appointment for many months at a time if the pain in his hand was as debilitating as he alleges. Without minimizing the challenges Brollier faces, the record also indicates that Brollier had methods of transportation available to him. He was able to attend medical centers on numerous occasions for issues such as bug bits and coughs,[148] he stated he had access to others' vehicles,[149] and the record shows that he used his own vehicle on certain occasions.[150] Brollier did not address this point in his reply brief, but rather continues to allege conclusorily that because he is homeless, he should not be expected to follow through with his appointments. On balance, the court finds there is substantial evidence, including the lack of longitudinal records and failure to follow through his prescribed course of treatment, to support the ALJ's findings that Brollier's testimony was not credible.

## IV. CONCLUSION

Brollier's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED. The Clerk shall close the file.

---

[146] *Fair v. Rowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[147] *See* Docket No. 17 at 13.

[148] *See* AR at 401, 424, 427, 434, 452-53, 478.

[149] *See id.* at 44-45.

[150] *See* AR at 401, 422, 424, 428, 446, 481.

21

Case No.: 5:12-CV-01211-PSG
ORDER

United States District Court
For the Northern District of California

1

2   **IT IS SO ORDERED.**

3   Dated: April 30, 2013

4   PAUL S. GREWAL
    United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:12-CV-01211-PSG
ORDER

**United States District Court**
For the Northern District of California